UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALEJANDRO ESPINOZA,                                              CASE NO.

    Plaintiff,

vs.

QUAY EYEWEAR, INC., Foreign for Profit Corporation
D/B/A QUAY

    Defendant,
_____/

**COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND**

Plaintiff, ALEJANDRO ESPINOZA, through undersigned counsel, sues Defendant, QUAY EYEWEAR, INC., a foreign corporation d/b/a QUAY (hereinafter referred to as "QUAY"), for declaratory and injunctive relief, and damages, and alleges as follows:

1) This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

2) This action is also brought pursuant to 28 C.F.R. Part 36.

3) This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

4) Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

5) Plaintiff is sui juris, and she is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

6) Defendant, QUAY, is a foreign limited liability company authorized to do business and doing business in the State of Florida.

7) Defendant, QUAY, is a company that sells men's and women's sunglasses, glasses, jewelry and accessories. There is a retail location in Miami-Dade County.

8) Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9) Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase sunglasses and a cleaning kit.

10) Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer. The computer is Plaintiff's personal property, and a claim for trespass attached to same.

11) The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

12) The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

13) Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

14) Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

15) At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision.

16) Plaintiff's visual impairment interferes with his day-to-day activities and causes limitations in visualizing their environment. As such, Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

17) Plaintiff regularly uses the computer, but she needs the assistance of special software for visually impaired persons. The software that she uses is screen reader software that is readily available commercially.

18) Defendant is a private entity which owns and operates retail locations. The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

19) Defendant's website is a place of public accommodation per 42 U.S.C. Section 12181(7)(E) because it's an extension of Defendant's brick and mortar stores. The public is able to, among other things, view the products available at defendant's locations, purchase sunglasses, glasses, jewelry and accessories through defendant's website, create an account, register to track orders, join the loyalty program, learn the story behind Defendant's brand, and get exclusive offers.

20) Since the Defendant's website is a public accommodation, it must comply with the requirements of the ADA. The website cannot discriminate against individuals with disabilities.

21) Plaintiff is a customer of Defendant who is and was interested in purchasing sunglasses through Defendant's website and at Defendant's stores and visiting Defendant's brick and mortar locations.

22) Plaintiff is not able to visit the physical locations without the assistance of a family member or caretaker, so the ability to purchase merchandise on Defendant's website for delivery to his home is important to his as an alternative when she is not able to visit the Defendant's stores.

23) The website also services Defendant's physical stores by providing information on its brand, track orders, join the loyalty program, get exclusive offers, and other information that Defendant is interested in communicating to its customers about its physical locations.

24) Since the website allows the public the ability to view the products available at defendant's locations, purchase sunglasses, glasses, jewelry and accessories, through defendant's website, create an account, register to track orders, join the loyalty program, learn the story behind Defendant's brand, and get exclusive offers, the website is an extension of, and gateway to, Defendant's physical stores.  By this nexus, the website is characterized as an intangible service, privilege and advantage provided by a place of public accommodation as defined under the ADA, and thus an extension of the services, privileges and advantages made available to the general public by Defendant through its retail brick and mortar stores.

25) Because the public can view and purchase Defendant's merchandise that is also offered for sale by Defendant at its physical stores, create an account, register to track orders, join the loyalty program, learn the story behind Defendant's brand, and get exclusive offers.
the website is an extension of and gateway to the physical stores, which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). As such, the website, as an intangible service, privilege and advantage of Defendant's brick and mortar locations, must be fully accessible and in compliance with the ADA, must not discriminate against individuals with disabilities, and must not deny full and equal enjoyment of the same services, privileges and advantages afforded to the general public both online and at the physical locations.

26) At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://www.quayaustralia.com/. Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an

intangible service, privilege and advantage of Defendant's brick and mortar locations, and Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA.

27) Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize, Defendant's physical stores, and purchase Defendant's merchandise, sign up for Defendant's newsletter and create an account through the website and at Defendant's physical stores.

28) The opportunity to shop Defendant's merchandise from his home is an important accommodation for Plaintiff because traveling outside of the home as a visually disabled individual is often a difficult, hazardous, frustrating, confusing, and frightening experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

29) Like most consumers, Plaintiff accesses numerous websites at a time to compare merchandise and prices. Plaintiff may look at several dozens of sites to compare features and prices.

30) During the months of June and July, 2022, Plaintiff attempted on several occasions to utilize the website to browse through the merchandise to educate himself as to the merchandise and with the intent to make a purchase through the website or at one of Defendant's physical stores.

31) Places of public accommodation are not just brick-and-mortar structures. The United States Department of Justice and the binding case law increasingly recognize that private entities are providing goods and services to the public through websites that operate as places of public accommodation under Title III.

32) Defendant is required to make reasonable accommodations to its websites for individuals with disabilities to allow them to participate in web-based promotions and obtain goods or services via the Internet just as sighted persons are able to do.

33) Plaintiff utilized Chrome Vox ("Screen Reader Software") to attempt to purchase clothing on Defendant's website.  However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

34) A person who can see can enjoy the benefits and privileges provided by Defendant's website that include, but are not limited to viewing the products available at defendant's locations, purchasing sunglasses, glasses, jewelry and accessories, through defendant's website, create an account, register to track orders, join the loyalty program, learn the story behind Defendant's brand, and get exclusive offers.

35) A person who cannot see, like the Plaintiff in this case, cannot go to Defendant's website and avail themselves of the same privileges. Thus, the Plaintiff has suffered discrimination due to Defendant's failure to provide a reasonable accommodation for Plaintiff's disability.

36) The Department of Justice has provided useful guidance regarding website accessibility under the ADA, and the binding and persuasive case law in this district has applied the Web Content Accessibility Guidelines ("WCAG") 2.0 or 2.1 to determine accessibility.

37) Defendant's website does in fact fail the following WCAG 2.0-AA Compliance standards and it does not provide sufficient alternatives to serve the equivalent purpose:

    Violation: Labels or instructions are not provided when content requires user input.

    Note/Proof: The options within the 'Combo Box' for selecting a country/region on the checkout page are not labeled in and audible format as the user cycles through them

(video). They should work like this example shown on this page. In instances when the options presented in the dropdown are unfamiliar to the user, not having them read out loud as one cycles through them makes selecting the desired option difficult – one must select each individual option to get it read.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Nature of the Violation: required by WCAG 2.1's Standard 3.3.2 Labels or Instructions.

Violations that make it difficult to navigate through the site

Violation: Focusable components do not receive focus in an order that preserves meaning and operability.

Note/Proof: After loading a product page, the focus is shifted to the reviews section at the bottom of the page. User has to navigate back up the page, and through a carousel to get to the section where the options for selecting and adding to cart the desired product are available (video).

Applicable WCAG 2.1 Standard at Issue: Standard 2.4.3 Focus Order (Level A).

Nature of the Violation: required by WCAG 2.1's Standard 2.4.3 Focus Order.

Violation: Focusable components do not receive focus in an order that preserves meaning and operability.

Note/Proof: Within the product details, when a user activates the size guide button, the navigation sequence takes them to a completely new page. The user has no way within that page to navigate back to the product page that they were previously viewing. Operability is not preserved (video).

Applicable WCAG 2.1 Standard at Issue: Standard 2.4.3 Focus Order (Level A).

Nature of the Violation: required by WCAG 2.1's Standard 2.4.3 Focus Order.

38) Furthermore, Defendant's website does not contain accessibility assistance that would direct a visually impaired person like the Plaintiff to someone who she can contact for assistance, questions, or concerns.

39) Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the website, in contravention of the ADA.

40) On information and belief, Defendant is, and at all times has been, aware of the barriers to its website which prevent individuals with disabilities who are visually impaired from comprehending the information within same, and is also aware of the need to provide access to all persons who visit its site.

41) Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this Complaint, such that this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's discriminatory practices in connection with use of its website.

42) Notice to Defendant is not required because of Defendant's failure to cure the violations.

43) Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

44) Plaintiff has retained the undersigned attorneys to represent him in this case, and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

45) Plaintiff realleges paragraphs 1 through 44 as if set forth fully herein.

46) Defendant owns and operates the https://www.quayaustralia.com/ website, and is a public accommodation subject to the ADA pursuant to 42 U.S.C. §12181(7)(E).

47) Defendant's website is inaccessible to persons with disabilities like the Plaintiff, who is visually impaired. Plaintiff was not able to enjoy full and equal access to the information and services that Defendant has made available to the public on its website, in violation of 42 U.S.C. §12101. *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

48) Defendant's website is not in compliance with the ADA.

49) Defendant has made no reasonable accommodation for Plaintiff's disability.

50) A cursory review of a portion of the Defendant's website revealed that the website is not accessible to persons like the Plaintiff that are visually impaired as required by law and for which there is no sufficient alternative on Defendant's website, including:

> Violation: Labels or instructions are not provided when content requires user input.
>
> Note/Proof: The options within the 'Combo Box' for selecting a country/region on the checkout page are not labeled in and audible format as the user cycles through them (video). They should work like this example shown on this page. In instances when the options presented in the dropdown are unfamiliar to the user, not having them read out loud as one cycles through them makes selecting the desired option difficult – one must select each individual option to get it read.
>
> Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).
>
> Nature of the Violation: required by WCAG 2.1's Standard 3.3.2 Labels or Instructions.
>
> Violations that make it difficult to navigate through the site
>
> Violation: Focusable components do not receive focus in an order that preserves meaning and operability.

> Note/Proof: After loading a product page, the focus is shifted to the reviews section at the bottom of the page. User has to navigate back up the page, and through a carousel to get to the section where the options for selecting and adding to cart the desired product are available (video).
>
> Applicable WCAG 2.1 Standard at Issue: Standard 2.4.3 Focus Order (Level A).
>
> Nature of the Violation: required by WCAG 2.1's Standard 2.4.3 Focus Order.
>
> Violation: Focusable components do not receive focus in an order that preserves meaning and operability.
>
> Note/Proof: Within the product details, when a user activates the size guide button, the navigation sequence takes them to a completely new page. The user has no way within that page to navigate back to the product page that they were previously viewing. Operability is not preserved (video).
>
> Applicable WCAG 2.1 Standard at Issue: Standard 2.4.3 Focus Order (Level A).
>
> Nature of the Violation: required by WCAG 2.1's Standard 2.4.3 Focus Order.

51) Due to Defendant's failure to provide an ADA compliant website, the Plaintiff has been injured since she has been denied full access to Defendant's website.

52) As a result, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to correct the inaccessibility that leads to discrimination against visually impaired persons.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A.      A declaration that Defendant's website is in violation of the ADA;

B.         An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

C.         An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

D.         An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

E.         An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

F.         An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to ensure effective communication for individuals who are visually disabled;

G.         An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

H.         An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or

code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.  An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

J.  An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

K.  An award to Plaintiff of his reasonable attorney's fees and costs pursuant to in 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.

---


[1]

## COUNT II – TRESPASS

53) Plaintiff realleges paragraphs 1 through 44 as if set forth herein.

54) Defendant's website contains software analytics. Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

55) Plaintiff never consented to and was unaware that Defendant's website was placing software on his computer.

56) Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on his personal computer, which was done without his knowledge and consent.

57) Defendant's trespass has damaged Plaintiff by affecting the condition and value of his computer.

58) On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

> Consent
>
> By using this website (https://www.quayaustralia.com) (the "Website") you consent to the use of cookies in accordance with this Cookies Policy.  You will have seen a pop up to this effect on your first visit to this website; although it will not usually appear on subsequent visits you may withdraw your consent at any time by following the instructions below.

Disabling cookies

If you do not agree to the use of these cookies, please disable them by following the instructions for your browser set out here. Please note that some of the services will not function so well if cookies are disabled.

Where the organization setting the cookie provides an automated disabling tool in respect of its cookie(s) we list the name of that organization, the category of cookies it sets together with a link to its automated disabling tool. In all other cases, we list the names of the cookies themselves and their source at the date of this Cookies policy so that you can easily identify and disable them if you want through your browser controls.

Some browsers make is possible for you to signal that you do not want your internet browsing activity to be tracked. Disabling tracking may interfere with some uses of the Website and the services provided on the Website.

After your initial visit to the Website, we may change the cookies we use. This cookies policy will always allow you to know who is placing cookies, for what purpose and give you the means to disable them so you should check it from time to time.

What are cookies?

Cookies are text files containing small amounts of information which are downloaded to your device when you visit a website. Cookies are then sent back to the originating web domain on your subsequent visits to that domain. Most web pages contain elements from multiple web domains so when you visit the Website, your browser may receive cookies from several sources.

Cookies are useful because they allow a website to recognize a user's device. Cookies allow you to navigate between pages efficiently, remember preferences and generally improve the user experience. They can also be used to tailor advertising to your interests through tracking your browsing across websites.

Session cookies are deleted automatically when you close your browser and persistent cookies remain on your device after the browser is closed (for example to remember your user preferences when you return to the site).

What types of cookies do we use?

We describe the categories of cookies we and our affiliates and contractors use below.

Strictly Necessary Cookies

These cookies are essential in order to enable you to move around the website and use its features. Without these cookies, services you have asked for (such as navigating between pages) cannot be provided.

This cookie is set by the cookie compliance solution from OneTrust. It stores information about the categories of cookies the site uses and whether visitors have given or withdrawn consent for the use of each category. This enables site owners to prevent cookies in each category from being set in the user's browser, when consent is not given. The cookie has a normal lifespan of one year, so that returning visitors to the site will have their preferences remembered. It contains no information that can identify the site visitor.

Performance Cookies

We make use of analytic cookies to analyze how our visitors use our Website and to monitor Website performance. This allows us to provide a high quality experience by customizing our offering and quickly identifying and fixing any issues that arise. For example, we might use performance cookies to keep track of which pages are most popular, which method of linking between pages is most effective, and to determine why some pages are receiving error messages. We might also use these cookies to highlight articles or site services that we think will be of interest to you based on your usage of the website. The information collected by these cookies is not associated with your personal information by us or by our contractors.

Website Functionality Cookies

We make use of cookies to provide you with certain functionality. For example, to remember choices you make (such as your user name, language or the region you are in), or to recognize the platform from which you access the site, and to provide enhanced and more personal features. These cookies are not used to track your browsing on other sites.

Advertising Cookies

Advertising cookies (or targeting cookies) collect information about the browsing habits associated with your device and are used to make advertising more relevant to you and your interests. They are also used by services provided by third parties on this Website, such as 'Like' or 'Share' buttons in addition to providing the requested functionality. Third parties provide these services in return for recognizing that you (or more accurately your device has) have visited a certain website. These third parties put down advertising

cookies both when you visit our Website and when you use their services and navigate away from our Website.

Use of IP addresses and web logs

We may also use your IP address and browser type to help diagnose problems with our server, to administer our Website and to improve the service we offer to you. An IP address is a numeric code that identifies your computer on the internet. Your IP address might also be used to gather broad demographic information.

We may perform IP lookups to determine which domain you are coming from (e.g. google.com) to more accurately gauge our users' demographics.

Information from these types of cookies and technologies or about website usage is not combined with information about you from any other source.

The following table documents each type of cookie, along with how long a persistent cookie lasts

59) Due to Plaintiff's disability, she could not understand Defendant's website and she could not give informed consent to Defendant's installation of data and information tracking software on his computer. Defendant also could not give informed consent to Defendant's collection of his browsing history and the placement of analytics on his computer.

60) Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from his computer and determine which programs should be installed and operated on his computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

## **Request for Jury Trial**

61) Plaintiff requests a jury trial.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email: info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868
Email:  radamslaw@bellsouth.net
By: _____/s/_____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434